UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STAFFORD BERRIAN,

                              Plaintiff,

        – against –

CITY OF NEW YORK; Commissioner DORA B.
SCHRIRO; Chief of Department MICHAEL
HOURIHANE; Deputy Commissioner
FLORENCE L. FINKLE; Warden LUIS RIVERA;
Captain "JANE" COUNCIL; Captain "JOHN"
MEDINA; Officer "JOHN" PEPE; Officer
"JOHN" DEJESUS; and Officer "JOHN" ELLIS,

                              Defendants.

13 CIV. 1719 (DLC) (DLF)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS**

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

## <u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>:

TABLE OF AUTHORITES ...................................................................................ii-v

PRELIMINARY STATEMENT ..............................................................................1

FACTS .....................................................................................................................2

ARGUMENT ...........................................................................................................4

    I.      PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS ........................................................................................................ 4

    II.     THE AMOUNT OF FEES SOUGHT BY PLAINTIFF IS REASONABLE ......... 5

    A.     The PLRA Sets the Hourly Rates for All of Plaintiff's Attorneys ........................ 5

    B.     The Rate Sought for Work Done by Paralegals Is Reasonable ............................. 9

    C.     ECBA and The Legal Aid Society Expended a Reasonable Number of Hours Litigating this Case ........................................................................................ 10

    1.     The Time Spent Was Reasonable In Light of the Complex Issues Raised by this Case ........................................................................................................... 11

    2.     The Work Completed by Plaintiff's Attorneys Was Not Duplicative .................. 13

    3.     Defendants' Litigation Tactics Drove Up Costs ................................................... 14

    4.     Plaintiff's Recovery Does Not Justify a Reduction in Fees................................... 18

    III.    THE COSTS SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE ..................................................................................................................... 19

CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s)</u>:

**<u>CASES</u>:**

*Anderson v. City of New York,*
     132 F. Supp. 2d 239 (S.D.N.Y. 2001) ............................................................................ 19

*Barbour v. City of White Plains,*
     07 Civ. 3014 (RPP), 2013 WL 5526234 (S.D.N.Y. Oct. 7, 2013) ............................ 14, 18

*Barbour v. City of White Plains,*
     788 F. Supp. 2d 216 (S.D.N.Y. 2011) *aff'd,*
     700 F.3d 631 (2d Cir. 2012) ........................................................................................ 17

*Brown v. Kelly,*
     244 F.R.D. 222 (S.D.N.Y. 2007) .................................................................................... 7

*Carbonell v. Acrish,*
     154 F. Supp. 2d 552 (S.D.N.Y. 2001) .......................................................................... 19

*City of Riverside v. Rivera,*
     477 U.S. 561 (1986) ................................................................................................ 17, 18

*Crescent Publishing Grp., Inc. v. Playboy Enterprises, Inc.,*
     246 F.3d 142 (2d. Cir. 2001) ......................................................................................... 8

*Estrella v. P.R. Painting Corp.,*
     596 F. Supp. 2d 723 (E.D.N.Y. 2009) .......................................................................... 19

*Fox v. Vice,*
     __ U.S. __, 131 S. Ct. 2205 (2011) ............................................................................... 5

*Getty Petroleum Corp. v. Bartco Petroleum Corp.,*
     858 F.2d 103 (2d Cir. 1988) .......................................................................................... 8

*Grant v. Martinez,*
     973 F.2d 96 (2d Cir. 1992) ........................................................................................... 11

*Harvey v. Home Savers Consulting Corp.,*
     07 Civ. 02645 (JG) (SMG), 2011 WL 4377839 (E.D.N.Y. Aug. 12, 2011) ..................... 7

*Heng Chan v. Sung Yue Tung Corp.,*
     03 Civ. 6048, 2007 WL 1373118 (S.D.N.Y. May 8, 2007) ............................................. 8

*Hnot v. Willis Group Holdings Ltd,*
     01 Civ. 6558, 2008 WL 1166309 (S.D.N.Y. April 7, 2008) ............................................ 9

*Kuper v. Empire Blue Cross and Blue Shield*,
    99 Civ. 1190, 2003 WL 23350111 (S.D.N.Y. Dec. 18, 2003) .......................................... 8

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987)................................................................................................ 20

*LeBlanc–Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)........................................................................................ 19, 20

*Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC*,
    05 Civ. 6757, 2009 WL 466136 (S.D.N.Y. Feb. 25, 2009)........................................... 8, 9

*McBean v. City of New York*,
    02 Civ. 5426 (S.D.N.Y. 2002) ............................................................................................ 7

*Millea v. Metro-N. R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011).......................................................................................... 18, 19

*Mitchell v. Metro. Life Ins. Co.*,
    01 Civ. 2112, 2003 WL 25914312 (S.D.N.Y. Nov. 6, 2003) ........................................ 8, 9

*Morris v. Eversley*,
    343 F. Supp. 2d 234 (S.D.N.Y. 2004).............................................................................. 19

*N.Y. State Nat'l Org. for Women v. Pataki*,
    93 Civ. 7146, 2003 WL 2006608 (S.D.N.Y. Apr. 30, 2003)............................................ 8

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*,
    06 Civ. 13150, 2008 WL 5159777 (S.D.N.Y. Dec. 9, 2008)........................................... 8

*New York Gaslight Club v. Carey*,
    447 U.S. 54 (1980)............................................................................................................. 5

*Patrolmen's Benevolent Ass'n of City of New York, Inc. v. City of New York*,
    97 Civ. 7895 (SAS), 2003 WL 21782675 (S.D.N.Y. July 31, 2003) .............................. 14

*Perez v. Cate*,
    632 F.3d 553 (9th Cir. 2011) ........................................................................................... 10

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
    497 F.3d 133 (2d Cir. 2007).............................................................................................. 5

*Reynolds v. Goord*,
    No. 98 Civ. 6722 (DLC), 2001 WL 118564 (S.D.N.Y. Feb. 13, 2001) ...................... 6, 10

*Rodriguez v. Pressler & Pressler*, L.L.P.,
    No. 06 Civ. 5103 (BMC) (JO), 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009)................... 7

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)...........................................................................8

*Sheehan v. Metro. Life Ins. Co.*,
    450 F. Supp. 2d 321 (S.D.N.Y. 2006)........................................................................8, 9

*Shepherd v. Goord*,
    662 F.3d 603 (2d Cir. 2011).........................................................................................5

*Short v. Manhattan Apartments, Inc.*,
    286 F.R.D. 248 (S.D.N.Y. 2012) .................................................................................7

*Stanford v. City of New York*,
    13 Civ. 1736 (ALC) (MHD) (S.D.N.Y. Mar. 12, 2014)................................................15

*Truong v. N.Y. Hotel and Motel Trades Council*,
    07 Civ. 11383, 2011 WL 147689 (S.D.N.Y. Jan. 12, 2011)...........................................8

*Vazquez v. Ranieri Cheese Corp.*,
    07 Civ. 464, 2011 WL 554695 (E.D.N .Y. Feb. 7, 2011)................................................19

*Vilkhu v. City of New York*,
    06 Civ. 2095 (CPS) (JO), 2009 WL 1851019 (E.D.N.Y. June 26, 2009) *vacated and remanded*, 372 F. App'x 222 (2d Cir. 2010) ..................................................................14

*Watson v. E.S. Sutton, Inc.*,
    02 Civ. 02739, 2006 WL 6570643 (S.D.N.Y. Aug. 11, 2006) ........................................8

*Wise v. Kelly*,
    620 F. Supp. 2d 435 (S.D.N.Y. 2008)........................................................................7, 8

## **STATUTES**:

18 U.S.C. § 3006A(d)(1)....................................................................................................6

18 U.S.C. § 3006A(d)(2)....................................................................................................6

28 U.S.C. § 1920.............................................................................................................19

42 U.S.C. § 1983...............................................................................................................2

42 U.S.C. § 1997(e)(d).......................................................................................................5

42 U.S.C. § 1997e......................................................................................................1, 4, 5

**<u>RULES</u>**:

Fed. R. Civ. P. 68 (b) ................................................................................................... 4


**<u>OTHER AUTHORITIES</u>**:

Guide to Judiciary Policy, Vol. 7A, Ch. 2 § 230.16(a) ................................................. 6

Plaintiff Stafford Berrian, by his attorneys Emery Celli Brinckerhoff & Abady, LLP and The Legal Aid Society, submits this memorandum of law in support of Plaintiff's Motion for Attorneys' Fees and Costs.

## PRELIMINARY STATEMENT

Plaintiff respectfully requests an award of attorneys' fees and costs in the amount of $49,511.33 against all Defendants.  There is no dispute here that attorneys' fees, costs, and expenses are owed to the Plaintiff.  The Rule 68 Offer of Judgment extended by the Defendants, which was accepted by the Plaintiff, offered to settle Plaintiff's claims for $65,000, plus reasonable attorneys' fees, costs, and expenses, as permitted by the Prison Reform Litigation Act ("PLRA") 42 U.S.C. § 1997e.

The requested fees are more than reasonable, and are calculated using rates set by the Judicial Conference of the United States, pursuant to the formula set by the PLRA.  These fees are significantly below the actual cost of litigating this case, both because of the reduction of counsel's ordinary rates to conform with the PLRA rates, and because of Plaintiff's voluntary reduction of his time records.  Moreover, since the PLRA sets the rate for attorneys' fees, there is no dispute regarding the proper hourly rate for attorneys.  Further, Plaintiff's counsel has already voluntarily reduced its customary hourly rate for paralegals in this application by one-third.

The detailed time records submitted by Plaintiff's counsel demonstrate that the hours Plaintiff's counsel spent litigating this matter were reasonable and necessary given the complexity of the case, the volume of discovery, the posture of the case when it settled, and the litigation tactics employed by opposing counsel.  Plaintiff should be awarded the full attorneys' fees, costs, and expenses sought in this application.

1

**FACTS**

Plaintiff Stafford Berrian filed this civil rights action for damages pursuant to 42 U.S.C. § 1983 based on a vicious assault by New York City Department of Corrections ("DOC") staff members that broke Mr. Berrian's jaw, required surgical intervention, and resulted in permanent and lasting injuries. This assault by DOC staff members (the "Defendant Officers") was an act of retaliation, motivated by Mr. Berrian's report to Legal Aid Society Prisoner's Rights Project paralegal Allison Berger of an earlier assault by DOC staff. On August 1, 2012, shortly after Mr. Berrian's report to the Legal Aid Society, DOC officers marched into his Rikers Island cell, punched him in the face with closed fists, and broke his jaw (the "Incident").

The violation of Mr. Berrian's civil rights continued: Defendants then falsely charged Mr. Berrian with assault on staff and other fabricated charges, and found him guilty of these charges, based on staff members' fabricated allegations that he physically assaulted and spat on DOC staff members during the August 1 beating. The later hearing and DOC disciplinary conviction of Mr. Berrian on the Defendant Officers' false charges, both of which did not occur until nearly five months after the beating, were in retaliation for Mr. Berrian's exercise of his constitutionally protected rights in seeking redress for the Defendants' unlawful August 1 beating: in the months prior to the hearing and DOC disciplinary conviction, Mr. Berrian had engaged in constitutionally protected conduct by filing a Notice of Claim, retaining counsel, and preparing for the instant civil rights lawsuit based on the August 1 beating.

Mr. Berrian in no way conducted himself in any manner that warranted the excessive force used against him during the August 1 beating. After the Incident, Mr. Berrian was forced to undergo surgery to repair the closed fracture of the mandible on the right side of his jaw, and a metal plate and screws were placed in his jaw. Mr. Berrian could not chew solid foods or speak normally in the weeks following the Incident, and he felt excruciating pain in his

jaw.  Mr. Berrian currently suffers from, and will continue to suffer from, permanent numbness in the right side of his jaw.

Plaintiff filed this action on March 14, 2013.  Dkt. #1.  Defendants' counsel sought multiple extensions to answer Plaintiff's Complaint, which were granted.  Defendants ultimately sought an indefinite stay of this action pending the DOC's internal investigation into the Incident.  Dkt. # 16.  Plaintiff's counsel opposed this indefinite stay, dkt. # 17, and the Court denied the stay but gave Defendants a third enlargement of time to answer the Complaint.  On October 7, 2013, Defendants filed their Answer to Plaintiff's Complaint.  Dkt. # 19.  After the Initial Pretrial Conference, at which all of Defendants' counsel and three of Plaintiff's counsel appeared, a Pretrial Scheduling Order was entered, dkt. # 20, and the case was referred to Magistrate Judge Debra Freeman for settlement purposes, dkt. # 21.

Pursuant to the Court's Scheduling Order, Plaintiff's served their initial settlement demand on November 1, 2013.  Rosenfeld Dec. ¶ 68.  After agreeing to Defendants' request for a lengthy extension to respond to Plaintiff's initial demand, Defendants' relayed their initial offer to Plaintiff on December 20, 2013.  Rosenfeld Dec. ¶ 69.  Defendants opted not to participate in settlement discussions except in the most cursory manner.  Although Magistrate Judge Freeman asked the parties to schedule a follow-up phone call regarding the status of their settlement discussions, Defendants' counsel informed Plaintiff's counsel that Defendants' counsel did not "think a further call with MJ Freeman would be useful at this time."  Rosenfeld Dec. Ex. G.

As detailed in the Argument section, *see infra*, depositions of the DOC Officers and Captains were initially scheduled for the beginning of February 2014, but were then rescheduled to early March 2014 due to a discovery dispute regarding the production of Use of Force ("UOF") files.  Rosenfeld Dec. ¶¶ 38-50.  The first deposition in this matter, of the Legal

Aid Society paralegal who met with Mr. Berrian on August 1, 2012, was to take place on

February 19, 2014.  Rosenfeld Dec. ¶¶ 60-61.  Defendant the City of New York sent its Rule 68

Offer of Judgment to Plaintiff on February 14, 2014, via email.  Rosenfeld Dec. ¶ 72.  Plaintiff

accepted the Rule 68 Offer of Judgment, via email, on February 18, 2014.  Rosenfeld Dec. ¶ 74.

The Rule 68 Offer of Judgment offered to settle Mr. Berrian's claims for $65,000,

plus reasonable attorneys' fees, expenses, and costs to the extent that recovery of these items is

permitted by the PLRA.  Plaintiff and Defendants have been unable to come to a resolution on

the fees owed under this agreement.[1]

## ARGUMENT

## I.   PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

There is no dispute that Defendants must pay Plaintiff's reasonable attorneys' fees

and costs pursuant to the terms of Defendant's Rule 68 Offer of Judgment, and the resulting

Judgment in Plaintiff's favor.  *See* Dkt. # 29.  This Offer, which was accepted by Plaintiff,

permitted the Plaintiff to take a judgment against the City of New York for "Sixty-Five

Thousand ($65,000.00) Dollars, plus reasonable attorneys' fees, expenses, and costs to the

extent, and only to the extent, that recovery of attorneys' fees, expenses, and costs is permitted

by the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, to the date of this offer for

plaintiff's federal claims."  *Id.*  A Judgment permitting Plaintiff to recover his reasonable

---

[1] On March 5, 2014, Defendants sent Plaintiff a purported second Rule 68 Offer of Judgment for the attorneys' fees and costs owed under the previously accepted Rule 68 Offer.  Should it become material, Plaintiff will file a separate motion to strike this second Rule 68 Offer, which is improper.  While a Defendant can make multiple Rule 68 Offers if prior offers have not been accepted, Fed. R. Civ. P. 68 (b) ("An unaccepted offer is considered withdrawn, but it does not preclude a later offer"), Defendant cannot make a second Rule 68 Offer in a case where the Plaintiff has *already accepted* a prior Rule 68 Offer that disposes of all claims and that awards Plaintiff "reasonable" attorneys' fees and costs.

attorneys' fees and costs, as permitted by the Prison Litigation Reform Act, was entered by this

Court on March 6, 2014.  Dkt. # 29.

Plaintiff's recovery of attorneys' fees and costs in this matter is not just required

by the terms of the Rule 68 Offer and Judgment: it aligns with public policy by promoting a legal

system in which any plaintiff can afford to bring a "private attorney general" action to enforce

his civil rights.  *See, e.g.*, *Fox v. Vice*, __ U.S. __, 131 S. Ct. 2205, 2213 (2011) ("When a

plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private

attorney general, vindicating a policy that Congress considered of the highest priority.") (citation

and internal quotations omitted); *New York Gaslight Club v. Carey*, 447 U.S. 54, 63 (1980)

("Permitting an attorney's fee award to one in respondent's situation furthers this goal, while a

contrary rule would force the complainant to bear the costs of mandatory state and local

proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim.");

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 142 (2d Cir. 2007)

(identifying "the purpose behind most statutory fee authorizations" as "the encouragement of

attorneys to represent indigent clients and to act as private attorneys general in vindicating"

legislative policies) (citation and internal quotations omitted).

## II.    THE AMOUNT OF FEES SOUGHT BY PLAINTIFF IS REASONABLE

### A.    The PLRA Sets the Hourly Rates for All of Plaintiff's Attorneys

The PLRA limits the hourly rates of Plaintiff's attorneys to "150 percent of the

hourly rate established under section 3006A of title 18 [of the United States Code] for payment

of court-appointed counsel."  42 U.S.C. § 1997(e).[2]  The hourly rate that the PLRA rate is based

upon, commonly referred to as the CJA rate, is set by the Judicial Conference of the United

---

[2] The PLRA also limits attorneys' fees to 150% of a monetary judgment.  42 U.S.C. §
1997(e)(d); *Shepherd v. Goord*, 662 F.3d 603, 607 (2d Cir. 2011).  Because Plaintiff is seeking to
recover fees well below 150% of $65,000, this cap is not relevant in the instant action.

States.  *See* 18 U.S.C. § 3006A(d)(1) & (2).  The CJA Rate was $125 per hour for work performed on and between January 1, 2010 and August 31, 2013.  Guide to Judiciary Policy, Vol. 7A, Ch. 2 § 230.16(a).  The rate was reduced to $110 per hour for work performed on and between September 1, 2013 and February 28, 2014.  *Id.*[3]  Accordingly, the rate of compensation sought by Plaintiff's counsel is $187.50 per hour for work performed on and between January 1, 2010 and August 31, 2013, and $165.00 per hour for work performed on and between September 1, 2013 and February 28, 2014 (collectively, the "PLRA Rates").

The PLRA Rates apply to work done by each member of Plaintiff's legal team, regardless of their seniority.  As Judge Cote held in *Reynolds v. Goord*, No. 98 Civ. 6722 (DLC), 2001 WL 118564, at *2 (S.D.N.Y. Feb. 13, 2001), "[t]he PLRA does not require that attorneys with different experience levels be compensated at different rates."  Judge Cote noted in *Reynolds* that when PLRA rate is applicable, the only issue is whether "the hourly rates provided by the PLRA are reasonable as applied to the particular attorney, and in the context of this action."  *Id.*  Recognizing that the "work performed by the two associates [who worked on *Reynolds*] [is] customarily billed at rates far higher than the statutory [billing] cap," Judge Cote held it was appropriate to compensate all of the plaintiffs' attorneys, including less experienced associates, "at the maximum rate allowed by the statute."  *Id.*

As in *Reynolds*, Plaintiff's counsel ordinarily bills at rates far higher than the PLRA Rates.  Emery Celli Brinckerhoff & Abady ("ECBA") has been described as "a preeminent civil rights firm," and judicial notice has been taken of the quality and depth of

---

[3]  The rate was increased to $126 per hour for work performed on and after March 1, 2014. Guide to Judiciary Policy, Vol. 7A, Ch. 2 § 230.16(a).  The fees sought in the instant application, however, were all incurred before March 1, 2014.  Plaintiff will file a separate fee application seeking fees incurred in preparing and litigating the instant fee application, and those fees will be at the PLRA rate for work incurred after March 1, 2014.

ECBA attorneys' experience.  *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007); *Wise v. Kelly*, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008) ("This Court may also take judicial notice of ECBA's high reputation . . . finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court.") (citation omitted).  Courts have historically awarded ECBA attorneys rates well above the PLRA Rates, and consistent with counsel's ordinary billing rates.  *See Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (awarding Of Counsel ECBA attorney her full requested hourly rate of $525); *Harvey v. Home Savers Consulting Corp.*, 07 Civ. 02645 (JG) (SMG), 2011 WL 4377839, at *7-8 (E.D.N.Y. Aug. 12, 2011) (awarding two ECBA partners their full requested rate of $450 and $400 and awarding full requested rate of $325 for associate who graduated law school in 2005); *Rodriguez v. Pressler & Pressler*, L.L.P., No. 06 Civ. 5103 (BMC) (JO), 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009) (awarding ECBA partner his full requested rate of $450 and reversing magistrate judge's recommendation of a lower rate); *Wise*, 620 F. Supp. 2d at 444 (awarding ECBA partner hourly rate of $425 (ECBA sought $450 when application was made in 2007) and $300 for Ms. Rosenfeld, who was an associate at the time (ECBA sought $325)); *McBean v. City of New York*, 02 Civ. 5436 (S.D.N.Y.) (awarding ECBA attorneys' fees using ECBA's regular hourly rates of $400-$750 for partners, $300-$375 for associates, and $125 for paralegals).

The time of ECBA Partner Katherine Rosenfeld, who graduated from law school in 2001, is ordinarily billed at $475 per hour, Rosenfeld Dec. ¶ 85; the time of ECBA Partner Jonathan Abady, who graduated from law school in 1990, is ordinary billed at $600 per hour, Rosenfeld Dec. ¶ 87; and the time of ECBA Associate Jennifer Keighley, who graduated from law school in 2010, is ordinarily billed at $350 per hour, Rosenfeld Dec. ¶ 86.  These are the ordinary rates that ECBA's hourly clients pay for Ms. Rosenfeld, Mr. Abady, and Ms.

Keighley's work, including civil rights work, Rosenfeld Dec. ¶¶ 88-89,[4] and they are consistent

with the prevailing market rates in the Southern District of New York, Rosenfeld Dec. ¶ 93.

Indeed, these rates are similar to or lower than rates typically awarded by courts in the Southern

District,[5] and are commensurate with the rates awarded to ECBA attorneys, *see supra*.  Legal

Aid Society attorney Jonathan Chasan's ordinary hourly rate is $575.  Chasan Dec. ¶ 16.  His

rate, again, is consistent with prevailing market rates in the Southern District of New York,

Chasan Dec. ¶ 18, and is similar to or lower than rates awarded by courts in this district.[6]  There

---

[4] The rates paid by clients in the marketplace are the best evidence of a reasonable hourly rate. *See e.g. Crescent Publishing Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d. Cir. 2001) ("The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988) (affirming award of fees "based on counsel's usual billing rates").

[5] *See, e.g., Truong v. N.Y. Hotel and Motel Trades Council*, 07 Civ. 11383, 2011 WL 147689, at *3 (S.D.N.Y. Jan. 12, 2011) (awarding $500 to partner and finding that rate to be "far less than that often billed by law firm partners litigating complex cases in this district"); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 05 Civ. 6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (awarding partners an hourly rate of between $435 and $550 and awarding associates an hourly rate of between $200 and $365); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 to partners, $350 to senior associates, and $125 to paralegals despite the "relatively straightforward nature of [the] case"); *Wise*, 620 F. Supp. 2d at 447 (awarding ECBA partner Matthew D. Brinckerhoff an hourly rate of $425, ECBA associate Katherine Rosenfeld an hourly rate of $300, and ECBA paralegals an hourly rate of $100); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, 06 Civ. 13150, 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (awarding partners an hourly rate of $425, associates an hourly rate of $300, and paralegals an hourly rate of $150); *Heng Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (awarding $450 for partner); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (awarding $425 to partner and $300 to associates for work done between 2001 and 2005); *Watson v. E.S. Sutton, Inc.*, 02 Civ. 02739, 2006 WL 6570643, at *4 (S.D.N.Y. Aug. 11, 2006) (awarding an hourly rate of $500 to partners); *Kuper v. Empire Blue Cross and Blue Shield*, 99 Civ. 1190, 2003 WL 23350111, at *9 (S.D.N.Y. Dec. 18, 2003) (awarding $425 to partner in a two-lawyer firm); *Mitchell v. Metro. Life Ins. Co.*, 01 Civ. 2112, 2003 WL 25914312, at *2 (S.D.N.Y. Nov. 6, 2003) (awarding hourly rates between $425 and $500 for partners, $180 and $320 for associates, and $120 and $140 for paralegals); *N.Y. State Nat'l Org. for Women v. Pataki*, 93 Civ. 7146, 2003 WL 2006608 (S.D.N.Y. Apr. 30, 2003) (awarding $430 for partner from small civil rights firm).

[6] See cases cited *supra* n. 5.

is accordingly no justification for applying different billing rates than the statutory maximum

rate under the PLRA for the work performed by Plaintiff's attorneys.  Plaintiff's attorneys'

ordinary hourly billing rates have all already been reduced significantly as a result of the PLRA

rates.

### B.     The Rate Sought for Work Done by Paralegals Is Reasonable

The PLRA does not set forth a specific rate for work performed by paralegals.

ECBA seeks to recover fees for its paralegals' work, which is ordinarily billed at $150 per hour.

The $150 hourly rate is the rate charged to ECBA's hourly clients, Rosenfeld Dec. ¶ 127, and

courts in this district routinely award paralegal hourly rates at $150 or above.  Six years ago, in

*Hnot v. Willis Group Holdings Ltd*, 01 Civ. 6558, 2008 WL 1166309, at *3 (S.D.N.Y. April 7,

2008), an employment discrimination case, the court found that $150 per hour was a reasonable

hourly rate for paralegals based on a review of similar cases in New York.  *See e.g.*, *Lucky Brand*

*Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05 Civ. 6757, 2009 WL 466136, at *6 (S.D.N.Y.

Feb. 25, 2009) (awarding paralegal hourly rates ranging from $205 to $235);  *Sheehan v. Metro.*

*Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (awarding $150 paralegal hourly rate);

*Mitchell v. Metro Life Ins. Co.*, No. 01 Civ. 2112, 2003 WL 25914312, at *2 (S.D.N.Y. Nov. 6,

2003) (awarding paralegal rates ranging from $120 to $160 per hour).

In recognition of the fact that Plaintiff's attorneys' ordinary billing rates are

reduced under the PLRA, ECBA only seeks to recover fees for its paralegal's work at the rate of

$100 per hour.  This reduction to below-market rates makes the rate sought for work done by

ECBA's paralegals more than reasonable.  Moreover, this rate is supported by the case law.

Nearly 13 years ago, the *Reynolds v. Goord* court awarded a paralegal hourly rate of $75 for

work performed in this District that was subject to the PLRA.  No. 98 Civ. 6722 (DLC), 2001

WL 118564, at *2 (S.D.N.Y. Feb. 13, 2001); *see also Perez v. Cate*, 632 F.3d 553, 557 (9th Cir.

2011) (awarding a paralegal hourly rate under the PLRA that was equal to the maximum attorney rate under the PLRA because that hourly rate, $169.50, was still under the market rate for paralegal work in the Bay Area).  Given that a reasonable hourly rate for paralegal work in this District is $150, and that this is the rate ordinarily charged by ECBA to its paying clients, the $100 hourly rate sought for paralegal work should be awarded by the Court.

      **C.**    **ECBA and The Legal Aid Society Expended a Reasonable Number of Hours Litigating this Case**

      Counsel have submitted detailed, contemporaneous, daily time entries for the work performed on this case.  This includes a narrative of the work performed, the date on which the work was performed, and the number of hours expended in performing the work described, broken up into six minute increments.  *See* Rosenfeld Dec., Chasan Dec.  These records demonstrate that Plaintiff's attorneys have expended a reasonable number of hours throughout this matter.

      It is critical to note that Plaintiff has already substantially discounted thousands of dollars in fees in this matter.  In an exercise of billing discretion, Plaintiff voluntarily does not seek recovery for the 8.2 hours of time spent on this matter by Legal Aid Society Staff Attorney Mary Lynne Werlwas, who was consulted throughout the litigation.  Chasan Dec. ¶ 12.  Plaintiff has also voluntarily reduced the amount of time billed by Jennifer Keighley (by 7.9 hours), Rosenfeld Dec. ¶ 80, and by Jonathan Chasan (by 2.3 hours), Chasan Dec. ¶ 12.  In addition, ECBA attorneys Debbie Greenberger, Vasudha Talla, and Julia Sheketoff assisted and consulted with the litigation of this matter, but Plaintiff does not seek recovery for their fees (1.9 hours total).  Rosenfeld Dec. ¶ 81.  Former Legal Aid Society paralegal Allison Berger's time working on this matter has also not been submitted.  Chasan Dec. ¶ 25.  These voluntary reductions in the fees sought by Plaintiff make further reductions to Plaintiff's recovery unnecessary, as the hours

for which Plaintiff seeks fees only constitutes a portion of the hours actually expended on the case.

### 1.    The Time Spent Was Reasonable In Light of the Complex Issues Raised by this Case

In determining whether an attorney's expenditure of time is compensable, this Court must consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). This standard is met here: the 236.5 hours of attorney time and 44.6 hours of paralegal time was the reasonable time needed to litigate this case given its complexity and the stage of the litigation at the time the Rule 68 Offer was served.

Plaintiff's twenty-eight page Complaint raised serious allegations regarding (1) a vicious beating by DOC Officers that broke plaintiff's jaw and that was taken out in retaliation for the Plaintiff's report earlier that day to a Legal Aid Society paralegal of a prior assault by DOC staff; and (2) a retaliatory and sham disciplinary hearing and conviction, nearly five months after the bearing, that was in retaliation for Plaintiff's efforts to exercise his constitutionally protected right to seek redress for the Officer's earlier beating through the instant lawsuit.  In addition, Plaintiff's Complaint brought a *Monell* claim against the City of New York for its policy and practice of permitting DOC staff members to use excessive force to command, control, or discipline inmates.

The work done by Plaintiff's counsel on this matter was extensive.  Such work, the substance of which will be addressed in more detail in subsequent paragraphs, included:

- Drafting and filing the Complaint, and conducting legal research related to its drafting;
- Reviewing Plaintiff's medical records;
- Opposing the City's request for an indefinite stay;
- Attending an initial conference;

- Preparing initial disclosures, reviewing Defendants' initial disclosures, and preparing discovery demands;
- Engaging in negotiations with the City and conducting legal research related to the City's refusal to produce the video of the Incident in a useable format;
- Participating in two settlement conferences by phone and related settlement negotiations;
- Acquiring and consulting with Plaintiff's medical expert, including the service of Plaintiff's expert report;
- Drafting letters regarding a discovery dispute with respect to the City's production;
- Conducting legal research related to attorney-client and work-product privilege issues raised by Defendants' subpoena to Legal Aid Paralegal Allison Berger for a deposition and for her memo regarding Plaintiff and his allegations;
- Negotiating with opposing counsel regarding the scheduling of an inspection of Plaintiff's former cell at Rikers; and
- Reviewing voluminous discovery produced by the City, including extensive audio files, in preparation for depositions of the Defendant Officers.

The drafting of Plaintiff's Complaint required two in-person meetings with the Plaintiff: one while he was incarcerated at Rikers, and a second while he was incarcerated at Downstate Correctional Facility. Rosenfeld Dec. ¶¶ 7,13. The time spent travelling for both of these visits was reduced by 50%, as is customary in this District. The drafting of the Complaint required the review of voluminous medical records regarding the August 1 beating and the resulting treatment, as well as a review of records related to the Plaintiff's disciplinary conviction (including the NYC DOC Directive on Inmate Disciplinary Due Process). Rosenfeld Dec. ¶¶ 8-12. In addition, in order to provide effective representation to the Plaintiff, his counsel was required to do extensive legal research into the elements of a retaliation claim based on the sham disciplinary hearing and conviction, and to consult with Legal Aid Society counsel with expertise in jail disciplinary matters. Rosenfeld Dec. ¶ 11. The resulting Complaint, filed on March 14, 2013, brought five claims against the Defendants based on the beating and the

retaliatory disciplinary proceedings.  As a result of Plaintiff's thorough legal research, Defendants did not move to dismiss any of Plaintiff's claims.

Plaintiff also retained a consulting medical expert early in the case to review Plaintiff's medical records, assist in the determination of the cause of Plaintiff's injury, and to ultimately prepare an initial expert report after meeting with the Plaintiff and evaluating his injuries.  Rosenfeld Dec. ¶¶ 9, 34-37.  The resulting hours that ECBA's paralegals spent in preparing medical records for the experts review, and that Plaintiff's counsel spent in conferring with the expert and reviewing and serving his report on opposing counsel, were reasonable and necessary.[7]

In addition, Defendants sought to subpoena records and internal memorandum from the Legal Aid Society paralegal, Allison Berger, who met with the Plaintiff on the morning of the Incident, and to depose the same paralegal.  Rosenfeld Dec. ¶¶ 60-64.  Indeed, her deposition was scheduled to take place on February 19, 2014, the day after Defendants' Rule 68 Offer of Judgment was served.  This subpoena and deposition raised significant attorney client and work product issues for Plaintiff's counsel, and resulted in the reasonable expenditure of hours of legal research on how to respond to this subpoena and defend the deposition without waiving the attorney client or work product privileges.  Rosenfeld Dec. ¶ 66.  After conferring internally regarding the important privilege issues raised by the subpoena and deposition, Plaintiff's counsel ultimately produced a redacted version of the memo that the Legal Aid paralegal wrote regarding her meeting with the Plaintiff.  Rosenfeld Dec. ¶ 67.

### 2.   The Work Completed by Plaintiff's Attorneys Was Not Duplicative

Plaintiff's attorneys worked in tandem throughout this litigation, and not in duplication.  The majority of the work was done by ECBA, with the Legal Aid Society providing

---

[7] Note that Plaintiff does not seek to recover any expert expenditures in this fee application.

expertise and advice given the Legal Aid Society's experience litigating in the area of excessive

force against prisoners in DOC custody.  As noted above, Plaintiff has already voluntarily

reduced Legal Aid attorney Mary Lynne Werlwas's time working on this matter from 8.2 hours

to 0 hours.  Plaintiff has also voluntarily reduced Jonathan Chasan's time records by 2.3 hours,

and Jennifer Keighley's time records by 7.9 hours.  Rosenfeld Dec. ¶ 80, Chasan Dec. ¶ 12.

Within ECBA, the majority of the legal research and drafting was performed by the associate,

Jennifer Keighley, with the partner, Katherine Rosenfeld, reviewing and editing her work.  This

division of work is entirely appropriate and supported by the case law.  *See Barbour v. City of

White Plains*, 07 Civ. 3014 (RPP), 2013 WL 5526234, at *7 (S.D.N.Y. Oct. 7, 2013) (holding

that two attorneys who worked on a case did not unnecessarily duplicate each other's work

because "the contemporaneous time sheets reveal collaboration between the two attorneys, not

unnecessary or unreasonable duplication."); *Patrolmen's Benevolent Ass'n of City of New York,

Inc. v. City of New York*, 97 Civ. 7895 (SAS), 2003 WL 21782675, at *4 (S.D.N.Y. July 31,

2003) (holding that work performed by partner should have been delegated to an associate and

citing cases holding the same).

### 3.    Defendants' Litigation Tactics Drove Up Costs

Defendants' own litigation choices and tactics are the cause of certain fees

incurred in this case that could have otherwise been avoided.  *See*, *e.g.*, *Vilkhu v. City of New

York*, 06 Civ. 2095 (CPS) (JO), 2009 WL 1851019, at *14 (E.D.N.Y. June 26, 2009) *vacated and

remanded*, 372 F. App'x 222 (2d Cir. 2010) ("defendants mounted an extremely vigorous

defense in this case, which required plaintiff's attorneys to expend large quantities of time

responding to defendants' various requests, refusals, and court petitions . . . . Defendants' own

conduct precipitated much of this unpleasantness [between the parties], and accordingly, their

position that the hours expended by plaintiff should be substantially reduced on this ground rings

hollow."); *Stanford v. City of New York*, 13 Civ. 1736 (ALC) (MHD) (S.D.N.Y. Mar. 12, 2014) (Dkt. # 47) (characterizing Defendants' counsel's arguments as "makeweight").  Here too, this very same counsel's tactics caused Plaintiff's fees to rise.

As just one example, Plaintiff's counsel spent over six hours conducting legal research and conferring internally and with Defendants' counsel regarding Defendants' improper refusal to produce the video of the August 1 Incident in a readable format.  *See* Rosenfeld Dec. ¶ 33.  Although Judge Cote made clear during the Initial Conference that Defendants were to produce the video of the Incident as part of their Initial Disclosures, Defendants initially refused to provide Plaintiff with the proprietary software, called Archive Player, that was required in order for Plaintiff to be able to view the video.  Rosenfeld Dec. ¶¶ 23, 26.  Defendants' counsel has, in prior matters litigated by Plaintiff's counsel, provided Plaintiff's counsel with the software required to view videos from Rikers.  Rosenfeld Dec. ¶ 24.  But in this matter, Defendant's counsel inexplicably refused to do so, *see* Rosenfeld Dec. Ex. C at 1-2 ("This is not our issue - we are able to view the video with Archive Player. You will either have to obtain that program or convert the video to another form at your expense."), and Defendants' counsel also refused to make an inquiry with their IT department as to whether the file could be easily saved in a different format that could be viewed by Plaintiff's counsel, Rosenfeld Dec. ¶ 30 & Ex. C at 1 (in response to Ms. Rosenfeld's email asking Defendants' counsel to inquire with their IT department, Defendants' counsel stated that "the answer is no.").  Instead, Defendants' counsel demanded that Plaintiff's counsel pay a vendor over $2,000 to convert the file into a readable format, or provide Defendants' counsel with legal authority demonstrating that they were required to provide Plaintiff's counsel with the software.  Rosenfeld Dec. ¶¶ 26-29 & Ex. C at 1-2.  After much back and forth, Defendant's counsel finally agreed to provide Plaintiff's counsel

with the necessary software after admitting that the DOC usually includes the viewing software

on "the CD that contains the video [and] [f]or some reason the program was not on the disk we

got." Rosenfeld Dec. ¶ 31 & Ex. E.  The hours spent researching and conferring about this issue

were the direct result of Defendants' litigation tactics, and could have been completely avoided if

Defendants had agreed to produce the necessary software.

    Plaintiff's counsel also spent time and effort negotiating with Defendant's

counsel, and ultimately writing a letter to the Court, regarding Defendant's production of Use of

Force ("UOF") files.  Defendants' counsel initially agreed to provide UOF files for the past five

years for all the officer and captain Defendants, but not for the entirety of their careers at DOC.

Rosenfeld Dec. ¶ 41.  Changing course, Defendants then withdrew that proposal, and offered to

produce only <u>one</u> UOF file, relating to an incident in which Defendant Officer Ellis received

discipline.  Rosenfeld Dec. ¶ 43.  Plaintiff refused to accept this proposal, at which point

Defendants revised their position yet again, offering to provide only "Class A" UOF files and

UOF files involving an incident in which two or more of the officer or captain Defendants were

involved.[8]  Rosenfeld Dec. ¶ 45.  Plaintiff was forced to write to the Court to resolve this issue

given Plaintiff's concern that relevant UOF files would not be contained within Defendants'

production.  Rosenfeld Dec. ¶ 46.  Although Judge Cote ultimately agreed with Defendants' final

proposal, she indicated that Plaintiff was free to seek production of additional UOF files if

Plaintiff felt that Defendants' initial production was insufficient.  *See* Rosenfeld Dec. Ex. F.  The

lengthy time spent negotiating over this issue was the result of Defendants' continually changing

position on which UOF files they would agree to produce.  Again, Plaintiff's counsel's time and

---

[8] The DOC's division of "Class A" and "Class B" UOF incidents is supposed to rest on whether medical treatment beyond the prescription of over-the-counter medication or the administration of minor first aid was required.

efforts negotiating with Defendants' counsel and writing to the Court were the result of

Defendants' litigation tactics.

In addition, many hours that Plaintiff's counsel spent reviewing discovery and

preparing for upcoming depositions could have been avoided had Defendants been willing to

engage in serious settlement discussions earlier in the case.  Given that Plaintiff produced the

bulk of the relevant medical records on October 18, 2013, Rosenfeld Dec. ¶ 72, and served his

expert report on November 19, 2013, well ahead of the Court ordered deadline of May 23, 2014,

Rosenfeld Dec. ¶ 72, Defendants' delay in considering serious settlement discussions seems to

be without explanation.  *See Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 224-25

(S.D.N.Y. 2011) *aff'd*, 700 F.3d 631 (2d Cir. 2012) ("Defendants 'could have avoided liability

for the bulk of the attorney's fees for which they now find themselves liable by making a

reasonable settlement offer in a timely manner.'") (quoting *City of Riverside v. Rivera*, 477 U.S.

561, 580 n. 11 (1986)).

Depositions in this matter were noticed for February 4, 5, 6, 12, and 13 of 2014.

These depositions were postponed because of the dispute over the production of UOF files, but

were rescheduled for March 4, 5, 6, 11, and 12.[9]  To prepare for these upcoming depositions,

Plaintiff had begun the lengthy process of reviewing the discovery productions.  The universe of

documents (and other materials) in this matter was extensive: Plaintiff produced nearly 3000

pages of records, which consisted mainly of Plaintiff's medical records.  Rosenfeld Dec. ¶ 52.

Defendants produced nearly 1300 pages, which included, *inter alia*, the UOF file from the

Incident (as well as the UOF file from the July incident that Plaintiff had reported to the Legal

Aid Society), Plaintiff's medical records, photos of the cell and the Plaintiff following the

---

[9] At the time of the Rule 68 offer, these dates had yet to be confirmed by Defendants' counsel
because of delays in hearing back from DOC on the Officers' availability.

Incident, and the UOF files that Defendants' counsel agreed to produce.  Rosenfeld Dec. ¶ 53.  In addition, Defendants' production contained 108 audio files: 87 of Plaintiff's recorded phone conversations from his time incarcerated at Rikers, 14 recordings of interviews related to the ID investigations of both the July and August Incidents (the interviews themselves total nearly 500 minutes), and 7 recordings related to the adjudication hearing.  Rosenfeld Dec. ¶ 54.  Careful review of the document productions, the video of the Incident, and the audio recordings was necessary in order to prepare for depositions: Defendants' counsel's delay in engaging in settlement negotiations, therefore, drove up litigation costs by requiring Plaintiff's counsel to review the relevant discovery from both parties.

### 4.   Plaintiff's Recovery Does Not Justify a Reduction in Fees

Plaintiff's recovery, $65,000 plus reasonable attorneys' fees, costs and expenses, does not provide any support for a reduction in fees.  First, it is a significant sum of money, and it is in no way disproportionate to the attorneys' fees and costs sought by Plaintiff.[10]  Second, even if the attorneys' fees were disproportionate, "[d]isproportionality . . . is not" "a factor that may be considered in reducing fee applications."[11]  *Barbour*, 2013 WL 5526234, at *4; *see also Rivera*, 477 U.S. at 581 ("In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to the damages recovered, we decline to adopt such a rule ourselves."); *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) ("calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract

---

[10] The fact that the attorneys' fees and costs sought by Plaintiff do not come close to the limitation imposed by the PLRA, 150% of the judgment, provides further evidence that there is no disproportionality here.

[11] While "limited degree of success" is a factor to be considered in fee-shifting, this factor refers to "hours spent on unsuccessful fee-shifting claims." *Barbour*, 2013 WL 5526234, at *4 (quoting *Millea v. Metro–North R.R.*, 658 F.3d 154, 168 (2d Cir. 2011)).  Here, Plaintiff did not expend time on unsuccessful fee-shifting claims.

competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery"); *Vazquez v. Ranieri Cheese Corp.*, 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[C]ourts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery." (quoting *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009)).

## III.   THE COSTS SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE

As discussed above, the Rule 68 Offer of Judgment accepted by the Plaintiff entitles him to recover reasonable costs expended in litigating this action, as permitted by the PLRA.  Since the PLRA does not impose any relevant limitation on the costs that Plaintiff can recover,[12] Plaintiff should recover all of the costs that are reimbursable under § 1988: "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998) (internal quotations omitted). Plaintiff should recover those costs "ordinarily recoverable pursuant to 28 U.S.C. § 1920, Rule 54(d)(1) of the Federal Rules of Civil Procedure," costs recoverable under this "judicial district's local civil rules," and "any additional costs ordinarily charged in the particular legal marketplace." *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing *Anderson v. City of New York*, 132 F. Supp. 2d 239, 245 (S.D.N.Y.2001)).

ECBA incurred $3,825.83 in costs as set forth in further detail in Exhibit A to Ms. Rosenfeld's Affidavit.  Rosenfeld Dec. ¶¶ 128-131 & Ex. A.  The costs incurred by Plaintiff's counsel—e.g., filing fee, process service fees, computerized legal research, messenger service,

---

[12] Because the total attorneys' fees and costs sought by the Plaintiff in this matter does not exceed the PLRA's cap on attorneys' fees (150% of the judgment, here $97,500), it is irrelevant whether the PLRA cap on attorneys' fees also limits the costs that can be recovered. *Cf. Carbonell v. Acrish*, 154 F. Supp. 2d 552, 568-570 (S.D.N.Y. 2001) (evaluating which costs the plaintiff could recover irrespective of the PLRA's cap on attorneys' fees, and which costs were within the PLRA cap).

photocopying, postage, medical records copying costs, and travel costs—are costs ECBA routinely charges to its clients (*see* Rosenfeld Dec. ¶ 129), and are plainly compensable. *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 . . . .") (citations omitted); *see also LeBlanc-Sternberg*, 143 F.3d at 763 (noting that "computerized research expenses" are "recoverable as part of attorneys' fees, rather than as costs") (citation omitted).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that his motion for reasonable attorneys' fees and costs be granted.

Dated: March 25, 2014
       New York, New York

                                                              EMERY CELLI BRINCKERHOFF
                                                              & ABADY LLP

                                                              *Katherine Rosenfeld*

                                                              Katherine Rosenfeld
                                                              Jennifer Keighley
                                                              75 Rockefeller Plaza, 20th Floor
                                                              New York, New York 10019
                                                              (212) 763-5000

                                                              THE LEGAL AID SOCIETY
                                                              PRISONERS' RIGHTS PROJECT
                                                              Jonathan S. Chasan
                                                              Mary Lynne Werlwas
                                                              199 Water Street, 6th Floor
                                                              New York, New York 10038
                                                              (212) 577-3530

                                                              *Attorneys for Plaintiff Stafford Berrian*

20
